**ARMSTRONG BUICK, INC., an Oregon corporation; Braley & Graham Company, an Oregon corporation; Wallace Buick Company, dba Wallace Buick–AMC, an Oregon corporation, Plaintiffs,**

v.

**GENERAL MOTORS CORPORATION, a Delaware corporation, Defendant.**

Civ. No. 84–324–SO.

United States District Court,
D. Oregon.

Oct. 1, 1984.

Douglas G. Houser, Douglass M. Hamilton, Bullivant, Houser, Bailey, Pendergrass, Hoffman, O'Connell & Goyak, Portland, Or., for plaintiffs.

Wayne Hilliard, Bruce C. Hamlin, Spears, Lubersky, Campbell, Bledsoe, Anderson & Young, Portland, Or., for defendant.

OPINION

SOLOMON, Judge:

Plaintiffs, Armstrong Buick, Inc., Braley & Graham Company, and Wallace Buick Company (Dealers) filed this action to enjoin defendant, General Motors, from adding a new Buick dealership in the Portland Multiple Dealer Area.[1] The Dealers con-

---

**1.** The Portland Multiple Dealer Area is the geo-    graphic area assigned in the Dealer Sales and

tend that Oregon Revised Statute 650.150 protects franchised dealers against adding a new dealership when existing dealers can show the likelihood of a serious adverse economic impact on them.

Oregon Revised Statute 650.150 provides, in part:

(1) A dealer may enjoin a manufacturer, distributor or importer from franchising an additional motor vehicle dealership of the same line-make within the dealer's relevant market area for good cause, provided that the existing dealer files a complaint with a court of competent jurisdiction within the time period specified in subsection (4) of this section. For purposes of this section, an indication of the relevant market area shall be the area of sales and service responsibility designated in the existing dealer's franchise, but other factors such as actual sales and service area shall be considered.

\* \* \* \* \* \*

(3) In determining if good cause exists pursuant to subsections (1) and (2) of this section, the court shall consider such factors as:

(a) Whether threats or other coercive action, oral or written, were made to or taken against the dealer by the manufacturer, distributor or importer.

(b) Whether the dealer is asked to terminate one franchise in order to keep another franchise.

(c) Whether the existing franchise is providing adequate and convenient consumer care for the motor vehicles of the line-make in the market area.

These pertinent sections of the statute have never been judicially interpreted either by this court or by a state court of Oregon.

Under the statute, a court may enjoin the establishment of a new dealership. The statute lists three factors that a court can consider in determining whether good

cause exists. It is conceded that no threats or coercive action were made or taken against the dealers by General Motors and that none of the dealers were asked to terminate one franchise in order to keep another. The parties, however, disagree on whether the dealers are now providing adequate and convenient consumer service to Buick owners in the Gresham area. Although these factors are not exclusive, they reflect a desire to protect consumers and also to protect dealers from certain abuses of manufacturers.

■ The ordinary economic impact of an additional dealer does not fall into any of the listed categories. In fact, the act as passed does not contain the following provision under the section which requires the court to consider "Economic impact of the additional or relocated franchise on existing franchises" in determining whether good cause exists as required in an earlier draft of the statute. In my view, the statute was not designed to, nor does it cover, the factual situation involved in this case.

I find that the proposed dealership would probably improve the service to present Buick owners in the Gresham area and will probably increase the sale of Buick automobiles in that area.

■ Even if I were to find that the dealers' statutory argument was controlling, there is insufficient evidence to enjoin General Motors from establishing a dealership in the Gresham area. An injunction is an extraordinary remedy and requires clear and convincing proof. The dealers have not met that burden. They have not established that any of the three dealers will suffer a substantial adverse economic impact.

Jim Weston Pontiac-GMC is located in Gresham, Oregon and is more than ten miles from the nearest Buick dealer. The Buick automobile has a much lower percentage of sales in the Gresham area than

Service Agreement. The three plaintiff Dealers and a fourth dealer in Vancouver, Washington (who is not a plaintiff in this action) share the primary responsibility for sales and service for this area.

in any other area situated in the Portland Multiple Dealer Area.

I find that there is merit to General Motors' argument that proximity favorably affects dealer sales, and in view of the continued population growth in the Gresham area, it is likely that existing Buick dealers will not be able to adequately service the Gresham area. I further find that a dual Pontiac and Buick dealership in the Gresham area is not inconsistent with the policies of General Motors and will not present an unjustifiable adverse economic impact on the other dealers in the Portland area.

I, therefore, hold that General Motors' proposed granting of a Buick franchise to the Gresham dealer, Jim Weston Pontiac-GMC, is justifiable and should not be enjoined.

Counsel for General Motors shall submit proposed findings of fact and conclusions of law consistent with this opinion. No costs or attorney's fees.